**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 0:18-cv-61924-RNS**

MOUNIRA DOSS, as an individual,
and on behalf of all others similarly situated,

      Plaintiff,

vs.

GENERAL MILLS, INC.,
a Delaware Corporation,

      Defendant.

_____/

**<u>DEFENDANT GENERAL MILLS, INC.'S MOTION TO DISMISS</u>**
**<u>PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)</u>**

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

     I.     The Use of Pesticides and Accompanying Food Labeling Requirements
are Subject to a Comprehensive Federal Regulatory Scheme. ............................ 2

          A.     The EPA and FDA Regulate Trace Pesticides in Foods and
Expressly Permit Oat-Based Foods Like Cheerios to Contain
Glyphosate. ..................................................................................... 3

          B.     The FDA Does Not Require the Disclosure of Trace Pesticides on
the Labels of Manufactured Foods like Cheerios. .................................... 4

     II.     Overview of the Complaint's Allegations. ........................................................... 5

STANDARD OF REVIEW ............................................................................................. 7

ARGUMENT ................................................................................................................... 8

     I.     The Complaint Should Be Dismissed with Prejudice Because it is Barred
by NLEA Express Preemption. ............................................................................ 8

     II.     The Complaint Should Be Dismissed for Lack of Subject Matter
Jurisdiction. ........................................................................................................ 11

          A.     The Complaint fails to allege sufficient facts for Article III
standing. ......................................................................................... 11

          B.     The Complaint pertains to matters committed exclusively by
Congress to the jurisdiction of the EPA and the Circuit Courts. .............. 13

     III.     Each of the Complaint's Causes of Action Fail to State a Claim. ...................... 15

          A.     The FDUTPA claim should be dismissed because it does not
satisfy either the "reasonable consumer" or "causation" elements.......... 15

          B.     The warranty claims should be dismissed because Plaintiff does
not identify any actionable contract, there is no privity, and
Cheerios are "merchantable." ........................................................... 18

          C.     The unjust enrichment claim should be dismissed because Plaintiff
has adequate remedies at law. ............................................................ 19

CONCLUSION .............................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 7

*Bell v. Campbell Soup Co.*,
65 F. Supp. 3d 1328 (N.D. Fla. 2014) ................................................................ 8, 9

*Birmingham v. Walgreen*,
2014 WL 12479929 (S.D. Fla. Jan. 7, 2014) .......................................................... 9

*Boysen v. Walgreen Co.*,
2012 WL 2953069 (N.D. Cal. July 19, 2012) .................................................. 12, 13

*Butler v. Morgan*,
562 F'Appx 832 (11th Cir. 2014) ........................................................................... 7

*Crawford v. Gold Kist, Inc.*
614 F. Supp. 682 (M.D. Fla. 1985) ...................................................................... 19

*Cruz v. Mylan, Inc.*,
2010 WL 598688 (M.D. Fla. Feb. 17, 2010) ....................................................... 19

*Estrada v. Johnson & Johnson*,
2017 WL 2999026 (D.N.J. Jul. 14, 2017) ........................................................... 13

*Forcellati v. Hyland's, Inc.*,
2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) ...................................................... 10

*Garcia v. Clarins USA, Inc.*,
2014 WL 11997812 (S.D. Fla. Sept. 5, 2014) ..................................................... 18

*Geertson Farms, Inc. v. Johanns*,
439 F. Supp. 2d 1012 (N.D. Cal. 2006) .............................................................. 14

*Gibson v. Quaker Oats Co.*,
2017 WL 3508724 (N.D. Ill. Aug. 14, 2017) ...................................................... 11

*Herazo v. Whole Foods Mkt., Inc.*,
2015 WL 4514510 (S.D. Fla. Jul. 24, 2015) ........................................................ 10

*Hermosilla v. Coca-Cola Co.*,
2010 WL 11553428 (S.D. Fla. Aug. 17, 2010).....................................................15

*Herrington v. Johnson & Johnson Consumer Cos.*,
2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .......................................................12

*Hoban v. Sovereign Republic of Peru*,
204 F. Supp. 3d 1368 (S.D. Fla. Aug. 31, 2016) ..............................................8, 11

*In re Establishment Inspection of Wedgewood Vill. Pharm., Inc.*,
270 F. Supp. 2d 525 (D.N.J. 2003) .....................................................................10

*In re Fruit Juice Prods. Mktg. and Sales Pracs. Litig.*,
831 F. Supp. 2d 507 (D. Mass. 2011) ..............................................................12, 13

*In re Gen. Mills Glyphosate Litig.*,
2017 WL 2983877 (D. Minn. July 12, 2017) ....................................................16, 17

*In re: PepsiCo Inc., Bottled Water Mktg. & Sales Pracs Litig.*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008)...................................................................9

*Kais v. Mansiana Ocean Residences, LLC*,
2009 WL 825763 (S.D. Fla. Mar. 26, 2009) .........................................................17

*KC Leisure, Inc. v. Haber*,
972 So.2d 1069 (Fla.Dist.Ct.App.2008) ...............................................................17

*Kennedy v. Deschenes*,
2017 WL 2223050 (S.D. Fla. May 19, 2017) (Scola, J.)...........................................7

*Kinn v. Quaker Oats Co.*,
2017 WL 3922068 (N.D. Ill. Sept. 6, 2017) .........................................................17

*Koronthaly v. L'Oreal USA, Inc.*,
374 F. App'x 257 (3d Cir. 2010) .........................................................................12

*Lawrence v. Dunbar*,
919 F.2d 1525 (11th Cir. 1990) ...........................................................................8

*Licul v. Volkswagen Grp. of Am., Inc.*,
2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) .........................................................19

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
124 F. Supp. 3d 1283 (S.D. Fla. 2015) ............................................................17, 18

*MacMorris v. Wyeth, Inc.*,
2005 WL 1528626 (M.D. Fla. June 27, 2005).......................................................19

*Matthews v. Am. Honda Motor Co., Inc.*,
    2012 WL 2520675 (S.D. Fla. June 6, 2012) ........................................................................19

*Mills v. Giant of Maryland, LLC*,
    441 F. Supp. 2d 104 (D.D.C. 2006) .......................................................................................9

*Nat'l Assn. of Wheat Growers v. Zeise*,
    309 F. Supp. 3d 842 (E.D. Cal. 2018)....................................................................................6

*Nat. Res. Def. Council v. Johnson*,
    461 F.3d 164 ...................................................................................................................14, 15

*Nemphos v. Nestle Waters N. Am., Inc.*,
    775 F.3d 616 (4th Cir. 2015) ....................................................................................9, 10, 11

*Nichols v. Wm. Wrigley Jr. Co.*,
    2011 WL 181458 (S.D. Fla. Jan. 19, 2011) .........................................................................20

*Panitch v. Quaker Oats Co.*,
    2017 WL 3922149 (N.D. Ill. Sept. 6, 2017) .........................................................................17

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ............................................................................16, 17

*Perisic v. Ashley Furniture Indus., Inc.*,
    2018 WL 3391359 (M.D. Fla. June 27, 2018).....................................................................18

*Petinsky v. N & D Holding, Inc.*,
    2013 WL 6511738 (S.D. Fla. Dec. 12, 2013) .......................................................................8

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014).........................................................................................18

*Royal Typewriter Co. v. Xerographic Supplies Corp.*,
    719 F.2d 1092 (11th Cir. 1983) ..........................................................................................19

*Savalli v. Gerber Prods. Co.*,
    2016 WL 5390223 (S.D. Fla. Sept. 20, 2016) ...................................................................8, 9

*Speier-Roache v. Volkswagen Grp. of Am., Inc.*,
    2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) ......................................................................19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)....................................................................................................11, 12

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) ............................................................................................7

*Stansfield v. Minute Maid Co.*,
   124 F. Supp. 3d 1226 (N.D. Fla. 2015)............................................................9

*T.W.M. v. Am. Med. Sys., Inc.*
   886 F. Supp. 842 (N.D. Fla. 1995)............................................................18

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ............................................................9

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................19

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ............................................................15, 16

**STATUTES**

21. U.S.C. § 343 ............................................................ *passim*

7 U.S.C. § 136(bb) ............................................................13

21 U.S.C. § 321(r) ............................................................5

21 U.S.C. § 341-1(a)(2) ............................................................8

21 U.S.C. § 342(a)(2)(B) ............................................................3

21 U.S.C. § 346a ............................................................ *passim*

1990 Nutrition Labeling and Education Act ............................................................ *passim*

Fla. Stat. § 672.314 ............................................................18, 19

Florida Deceptive and Unfair Trade Practices Act ............................................................ *passim*

**RULES**

Fed. R. Civ. P. 12 ............................................................ *passim*

Fed. R. Civ. P. 23(b)(2) ............................................................7

**REGULATIONS**

7 C.F.R. § 205.671 ............................................................3, 4

21 C.F.R. § 100.1(c)(4) ............................................................8, 9

40 C.F.R. § 180.30 ............................................................3, 14

40 C.F.R. § 180.41 ........................................................................................................3, 4

40 C.F.R. § 180.364 .............................................................................................2, 3, 4, 14

**OTHER AUTHORITIES**

FDA CPG Sec. 562.700 Labeling of Food Bearing Residues of Pesticide
    Chemicals (Reissued Feb. 1, 1989), *available at*
    https://www.fda.gov/iceci/compliancemanuals/compliancepolicyguidanceman
    ual/ucm074585.htm ................................................................................................5

## **REQUEST FOR HEARING**

Pursuant to Local Civil Rule 7.1(b), Defendant General Mills, Inc., respectfully requests oral argument on its Motion to Dismiss filed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). General Mills believes argument would be helpful to the Court for several reasons.

First, as reflected in the Motion, General Mills has raised several arguments for dismissal that it believes are fully case-dispositive and not subject to cure via amendment, including: express preemption under 21 U.S.C. § 343-1(a), Plaintiff's lack of Article III standing, and lack of subject matter jurisdiction over the action under 21 U.S.C. § 346a(h). Because General Mills contends these are insuperable barriers to relief in this action, it believes the Court would benefit from an opportunity to fully consider these arguments prior to the case proceeding further.

Second, the adjudication of General Mills' Motion involves application of a comprehensive statutory scheme administered by the United States Food and Drug Administration ("FDA") and the Environmental Protection Agency ("EPA"). The relevant statutes are of sufficient complexity that General Mills believes it would be beneficial for the Court to have an opportunity to pose questions concerning these statutes' applicability here.

Third, two of the Motion's grounds for dismissal are raised under Fed. R. Civ. P. 12(b)(1), and therefore permit the Court to review evidence outside the pleadings in any ruling on those grounds. General Mills has, concurrent with the filing of this Motion, filed a Request for Judicial Notice ("RJN") that includes materials it believes are relevant to its Rule 12(b)(1) arguments. Oral argument would therefore permit both Parties, and the Court, to address the significance of that evidence in ruling on the Motion.

General Mills believes that oral argument of thirty (30) minutes per side would be adequate to address these issues, along with any other matters the Court wishes to address.

## MOTION TO DISMISS CLASS ACTION COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant General Mills, Inc. moves to dismiss Plaintiff Mounira Doss' Class Action Complaint with prejudice.

## MEMORANDUM OF LAW

### INTRODUCTION

Plaintiff insists she was "deceived" as to the "safety" of two of Defendant General Mills' flagship products: Original Cheerios and Honey Nut Cheerios. Compl. ¶¶ 35, 37. The premise of the supposed deception? That General Mills failed to disclose on Cheerios' labels that it might contain residual amounts of glyphosate, albeit at infinitesimal levels that are orders of magnitude below the regulatory threshold the Environmental Protection Agency ("EPA") has deemed safe. *Id.* ¶¶ 14-16; ¶¶ 19-20. This central theory of liability in the Complaint ignores Congress' comprehensive statutory scheme to regulate pesticides like glyphosate. Properly applied, this governing regulatory regime mandates dismissal of the Complaint on multiple bases.

*First*, the relevant labeling standard in the federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 343, *et. seq.*, imposes no requirement that labels of multi-ingredient foods like Cheerios disclose the potential presence of trace pesticides. 21 U.S.C. § 343(i)(2). Congress determined this labeling standard must be followed nationwide and uniformly, and so enacted an express preemption provision that bars any labeling requirements "not identical" to the federal requirement. 21 U.S.C. § 343-1(a)(2). Plaintiff's demand that Cheerios' labeling bear some disclosure about residual pesticides, which federal law undoubtedly does not require, is therefore expressly preempted.

*Second*, Plaintiff's allegations of "safety" concerns premised on trace amounts of glyphosate are, in light of governing agency determinations, far too conjectural and speculative to support Article III standing. The EPA has, after comprehensive scientific assessment and review, determined that oats (the principal ingredient in the Cheerios products at issue) are permitted to have residual levels of glyphosate at up to 30 parts per million ("ppm"). Yet, the third-party "tests" of Cheerios that the Complaint cites, report glyphosate levels in Cheerios that are a tiny fraction of this amount—sometimes as little as .015% of the EPA-permitted threshold. Compl. ¶ 16. Indeed, one of the third-parties whose testing is a centerpiece of the Complaint very recently concluded that—even when considering the potential presence of glyphosate—eating Cheerios is not only safe, it is "healthy." *See* Request for Judicial Notice ("RJN") Ex. E. Plaintiff's speculation

that Cheerios are nonetheless harmful is not enough to give rise to the concrete injury Article III requires.

*Third*, in deference to the EPA's expertise, Congress has strictly circumscribed federal courts' jurisdiction over actions that purport to challenge the residual pesticide levels the agency has set. *See* 21 U.S.C. §§ 346a(h)(1), (5). So, this Court lacks subject matter jurisdiction over the case.

Beyond these incurable defects that require dismissal of the Complaint in its entirety, each claim Plaintiff asserts fails individually as well.

Most notably, Plaintiff's claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") does not meet the reasonable consumer standard, nor does it plead the required causation. Plaintiff points to various statements on General Mills' websites as allegedly misleading about the products' safety, such as the statement that Cheerios are "wholesome goodness for toddlers and adults." Compl. ¶ 18. But no "reasonable consumer" reads that claim—or any of the other website statements cited—and interprets it to mean that Cheerios are completely free of trace pesticides down to the molecular level. Moreover, there is no allegation that these websites had any causal effect on Plaintiff's Cheerios purchases.

Plaintiff's warranty claims, meanwhile, fail for lack of privity among other reasons. The Complaint's final claim, unjust enrichment, is duplicative of Plaintiff's other claims and not cognizable as a separate cause of action.

For all these reasons, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

## I.    The Use of Pesticides and Accompanying Food Labeling Requirements are Subject to a Comprehensive Federal Regulatory Scheme.

General Mills manufactures and distributes the two cereals at issue: Original and Honey Nut Cheerios. Compl. ¶ 3. The Complaint's causes of action are all premised on the allegation that certain third-party "testing" indicates these cereals contain miniscule amounts of the pesticide glyphosate at trace levels the Complaint measures in billionths. Compl. ¶¶ 14-16.

Glyphosate is a widely-used pesticide that has been federally approved for decades. Compl. ¶¶ 7-9; 40 C.F.R. § 180.364. As the Complaint and EPA commentary both reflect, glyphosate is used as a pre-harvest desiccant for oats, to dry the crop and thereby increase yield. *See* Compl. ¶ 9; RJN Ex. C at 12 (EPA's Office Pesticide Programs, "Revised Glyphosate Issue Paper: Evaluation

of Carcinogenic Potential" (Dec. 12, 2017)). Whole grain oats are the principal ingredient in Original and Honey Nut Cheerios. RJN Ex. A; Compl. ¶ 19.

The Complaint asserts Cheerios' labels are unlawful and misleading because they "fail to inform" consumers about the alleged presence of glyphosate. Compl. ¶ 20. Plaintiff repeatedly demands revised Cheerios' labeling that does so. *Id.* ¶¶ 1, 2, 20, 26, 36, 45, 47, 51, Prayer for Relief ¶ E. As explained below, however, the Complaint disregards the governing federal regime for glyphosate's use, for food labeling, and agency conclusions that confirm glyphosate's safety.

### A.     The EPA and FDA Regulate Trace Pesticides in Foods and Expressly Permit Oat-Based Foods Like Cheerios to Contain Glyphosate.

Glyphosate, like all federally-approved pesticides used in agricultural products, is subject to a comprehensive body of statutes and regulations, implemented through the coordinated efforts of the EPA and the Food and Drug Administration ("FDA"). *See generally* 21 U.S.C. § 346a. The FDA expressly permits foods to contain trace amounts of pesticides, and only deems such foods "adulterated" if the "residual" amount of pesticide in the food exceeds levels the agency considers "unsafe." *See* 21 U.S.C. § 342(a)(2)(B). To give effect to this provision, the FDA works in conjunction with the EPA, who in turn sets the permitted "residual levels" for more than 500 chemicals that may be present in trace amounts in foods. *See* 40 C.F.R. Part 180, Subpart B.

The EPA's established residual level for glyphosate in oats is 30 parts per million (ppm). *See* 40 C.F.R. § 180.364 (tolerances for glyphosate residue); 40 C.F.R. § 180.41(24) (crop group tables). The EPA's establishment of that level as "safe" means that "the Administrator has determined that there is a reasonable certainty that no harm will result from aggregate exposure to the pesticide chemical residue, *including all anticipated dietary exposures* and all other exposures for which there is reliable information." 21 U.S.C. § 346a(b)(2)(A)(i), (ii) (emphasis added). Trace amounts of glyphosate are likewise permitted in foods certified as "organic." 7 C.F.R. § 205.671. For oats, residual levels of glyphosate up to 1.5 ppm are permitted in "organic" food. *See id.* (foods certified as organic permitted to have up to 5% of established EPA residual tolerance levels).

Reflecting the agency's expertise in the matter, Congress mandates that challenges to the EPA's residual levels for pesticides are committed exclusively to EPA administrative processes and are not cognizable in federal district courts. *See* 21 U.S.C. § 346a(h)(1)-(5). A party can only contest the EPA's residual levels in judicial proceedings after these administrative processes are exhausted, and then only with an action filed in the Circuit Courts of Appeal. *See* 21 U.S.C. § 346a(g)(2)(A), (B); § 346a(h)(1); 40 C.F.R. § 180.30(b). In fact, one of the third-parties on

whose "testing" the Complaint is largely premised, the Environmental Working Group ("EWG"), just last week filed a petition with the EPA to initiate this process. *See* RJN Ex. F. That petition demands changes to the permitted residual tolerance for glyphosate as to oats specifically, and for evidence relies on the same "testing" of Cheerios that the Complaint places at issue. *Compare* RJN Ex. F at 3, 6-8 *with* Compl. ¶¶ 14, 16.

As noted, neither Plaintiff nor her counsel tested Cheerios for the presence of glyphosate. Instead, the Complaint refers to testing performed by EWG and other third-parties, all of whom are advocacy groups expressly opposed to glyphosate's use. Compl. ¶¶ 14-16; *see also* RJN Exs. D, G-H (each "study" affirming the tester's opposition to glyphosate's use). In each "test," the amount of glyphosate allegedly detected is a tiny fraction of the level the EPA permits, sometimes as little as .015% of the EPA-approved 30 ppm standard. *Compare, e.g.*, Compl. ¶ 16 (EWG "test" detecting glyphosate in Original Cheerios at .47 ppm) *with* 40 C.F.R. §§ 180.364, 180.41(24) (residual tolerance for oats at 30 ppm).[1] Indeed, the levels detected are so low they are permissible in foods labeled "organic." *Compare* Compl. ¶ 15 (citing "test" results of .57 ppm for Honey Nut Cheerios) *with* 7 C.F.R. § 205.671 (oats in organic foods may have up to 1.5 ppm glyphosate).[2]

**B.    The FDA Does Not Require the Disclosure of Trace Pesticides on the Labels of Manufactured Foods like Cheerios.**

The FDA's statutory responsibilities under the FDCA extend further to implementation of national requirements for food labeling. *See generally* 21 U.S.C. § 343. The FDCA speaks directly to the issue of food labeling for the presence of residual pesticides. *See* U.S.C. § 343(l).

The FDCA only requires such labeling, under Section 343(l), for residual pesticides present in "raw agricultural commodities." *Id.* The requirement is limited: It applies only to "raw agricultural commodities" where the pesticide has been "applied after harvest," and then requires labeling declaring "the presence of such chemical" only on the "shipping container" of the

---

[1] In an apparent effort to inflate the perceived amount alleged of trace glyphosate in Cheerios, the Complaint measures it in "parts per billion" or "ppb." Compl. ¶¶ 14-16. The relevant measure reported by the EPA is parts per million. *See* 40 C.F.R. § 180.364. This Motion therefore states all measured amounts in parts per million as well, using simple division to convert the Complaint's ppb figures into ppm (e.g., 470 ppb (Compl. ¶ 16) = .470 ppm).

[2] Neither of the Cheerios cereals at issue are labeled "organic." RJN Ex A. So, the products are subject only to the 30-ppm standard, not the more stringent 1.5 organic ppm standard.

commodity. *Id.* Once the agricultural commodity is "removed from the shipping container" and "displayed for sale at retail out of such container," the labeling requirement no longer applies. *Id.*

Packaged cereals like Original and Honey Nut Cheerios cereals are, of course, not "raw agricultural commodities." *See* 21 U.S.C. § 321(r) ("The term 'raw agricultural commodity' means any food in its raw or natural state"); *see also* Compl. ¶ 2. Cheerios are, instead, a "food fabricated from two or more ingredients," and so subject to the requirements of a different labeling standard imposed by 21 U.S.C. § 343(i)(2). Under Section 343(i)(2), the relevant labeling requirement simply calls for disclosure of "the common or usual name of each such ingredient" in the food, and imposes no requirement as to the labeling of trace pesticides. *Id.* As the Complaint acknowledges, Cheerios' labels comply in full with Section 343(i)(2), by disclosing each ingredient in the product. *See* Compl. ¶ 19 ("Cheerios' ingredients are: whole grain oats, corn starch, sugar, salt, tripotassium phosphate, and Vitamin E"); *see also* RJN Ex. A.

Published FDA policy corroborates the labeling distinction drawn between Section 343(l) and Section 343(i)(2). The FDA maintains a Compliance Policy Guide directed to residual pesticides and the labeling of food. *See* FDA, "CPG Sec. 562.700 Labeling of Food Bearing Residues of Pesticide Chemicals" (Reissued Feb. 1, 1989), *available at* https://www.fda.gov/iceci/compliancemanuals/compliancepolicyguidancemanual/ucm074585.htm ("CPG" or "FDA CPG"). The CPG states that there is no labeling obligation to disclose the presence of trace pesticides in foods like Cheerios: "Pesticide residues resulting from preharvest application to raw agricultural commodities *have never been considered ingredients subject to the label declaration required by [§ 343(i)(2)]* of the [FDCA]." *Id.* (emphasis added).

Finally, Congress has determined that certain food labeling requirements must adhere to "national uniform" standards. *See* 21 U.S.C. § 343-1. To that end, Congress amended the FDCA with the 1990 Nutrition Labeling and Education Act ("NLEA"), a statute that expressly preempts any food labeling requirement "not identical" to the federal standard. *Id.* The labeling requirements of Section 343(i)(2) are subject to the NLEA's express preemption provision. *See* 21 U.S.C. § 343-1(a)(2).

## II.     Overview of the Complaint's Allegations.

Against this statutory backdrop, Doss' Complaint challenges the safety of Cheerios cereals due to the alleged presence of glyphosate and demands imposition of new labeling requirements to disclose its presence. Compl. ¶¶ 1, 2, 20, 26, 36, 45, 47, 51, Prayer for Relief ¶ E.

As to the safety of glyphosate, again citing third-party sources, the Complaint alleges glyphosate is "dangerous," "harmful," and "carcinogenic." Compl. ¶¶ 1, 10, 11. Like the rest of the Complaint, these allegations ignore contrary federal authority and multiple international organizations. The EPA concluded in December 2017—in a 228-page paper encompassing review of over 120 studies on the subject—that the collective data "do not support a carcinogenic process for glyphosate," nor "any other meaningful risk to human health" when glyphosate is used as directed. *See* RJN Ex. C at 144; Ex. B at 1 ((EPA Releases Draft Risk Assessments for Glyphosate") (Dec. 18, 2017) ("The draft human health risk assessment concludes that glyphosate is not likely to be carcinogenic to humans. The Agency's assessment found no other meaningful risks to human health when the product is used according to the pesticide label."). International scientific agencies have likewise concluded that there is insufficient evidence to show that glyphosate is carcinogenic, including the European Commission's Health and Consumer Protection Directorate-General, and multiple divisions of the World Health Organization. *See Nat'l Assn. of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 851 (E.D. Cal. 2018).

As to the Plaintiff herself, the Complaint does not allege she suffered any physical harm, or even any risk of such harm, from eating Cheerios. Compl. ¶ 2. Indeed, EWG, the third-party whose glyphosate "testing" the Complaint repeatedly cites, later explained that despite its testing it does not consider Cheerios unsafe and affirmed that eating oat-based foods like Cheerios is "healthy." *See* Compl. ¶¶ 1, 13, 16 (reliance on EWG testing); RJN Ex. E (EWG, "'Should I Throw Out My Cheerios?' And Other Questions About Roundup in Children's Food") (Aug. 27, 2018) ("Should I throw out my Cheerios? In a word: No. We don't think people should go to their pantries and toss out all of the cereal, oatmeal and other oat-based foods found there…. Oat-based foods remain a healthy source of fiber and nutrients for children and adults and can help to keep the heart and cardiovascular system healthy.").

The Complaint nonetheless repeatedly demands that Cheerios' labels should be revised to "disclose" and "tell consumers" about the alleged presence of glyphosate in the products because of these purported safety risks. Compl. ¶¶ 20, 26, 36, 40, 44, 51; Prayer for Relief ¶ E.

While the demand to "disclose" glyphosate's presence forms the basis of Plaintiff's claims, *id.*, the Complaint also points to allegedly "false or misleading" statements about Cheerios' "safety" that are purportedly untrue because of the presence of glyphosate. *Id.* ¶ 36. None of these statements are alleged by Plaintiff to appear on Cheerios labels. They are, instead, drawn from two

General Mills websites with generalized information about Cheerios and oats. *See Id*. ¶ 1 n.1; ¶ 17 n.7; *see* RJN Ex. I (referenced website pages). The Complaint repeatedly alleges the website statement that Cheerios are "wholesome goodness for toddlers and adults," is misleading, *id.* ¶¶ 1, 18, 43, 48, along with other website statements that identify the product's attributes (e.g., "Gluten free," "With one gram of sugar"), or laudatory statements about the product ("Cheerios is a perfect, crunchy snack anytime."). *Id*. ¶¶ 1-18.

The Complaint does not plead facts to suggest that any of these statements caused Doss to purchase Cheerios. Instead, the Complaint's sole allegation as to causation is that the alleged failure to disclose that the trace presence of glyphosate had some bearing on Doss' purchase decision. *Id*. ¶ 2 ("Had [Plaintiff] known that these products contained or could contain glyphosate, she would not have purchased them.").

Based on these allegations, the Complaint asserts four causes of action: (1) violation of the FDUTPA; (2) breach of express warranty; (3) breach of implied warranty; and (4) unjust enrichment. *Id*. ¶¶ 30-55. The Complaint seeks certification of both a Nationwide and Florida class, for injunctive relief under Fed. R. Civ. P. 23(b)(2) and damages under 23(b)(3). *Id.* ¶ 21.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). Merely offering "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Dismissal is proper under Rule 12(b)(1) if the plaintiff does not satisfy Article III standing requirements. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."). Similarly, Rule 12(b)(1) dismissal is proper if the court lacks subject matter jurisdiction over the plaintiff's claim for reasons other than, or in addition to, lack of standing. *See Butler v. Morgan*, 562 F'Appx 832, 834 (11th Cir. 2014); *Kennedy v. Deschenes*, 2017 WL 2223050, at *2 (S.D. Fla. May 19, 2017) (Scola, J.) (summarizing 12(b)(1) standard).

When facing a Rule 12(b)(1) motion, plaintiff bears the burden to prove jurisdiction by a preponderance of the evidence, and the court must give the plaintiff's allegations closer scrutiny than under Rule 12(b)(6). *See*, *e.g.*, *Petinsky v. N & D Holding, Inc.*, 2013 WL 6511738, at *1 (S.D. Fla. Dec. 12, 2013). Similarly, for a Rule 12(b)(1) motion that challenges the fact of jurisdiction—for lack of standing or otherwise—the Court may consider matters outside the pleadings and need not presume the truth of the complaint's factual allegations. *See Hoban v. Sovereign Republic of Peru*, 204 F. Supp. 3d 1368, 1370 (S.D. Fla. Aug. 31, 2016) ("[N]o presumptive truthfulness attaches to the plaintiff's allegations [for a factual 12(b)(1) attack], and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.") (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## ARGUMENT

**I.     The Complaint Should Be Dismissed with Prejudice Because it is Barred by NLEA Express Preemption.**

The Complaint repeatedly insists General Mills must "disclose" the presence of glyphosate on Cheerios' labels. Compl. ¶¶ 1, 2, 20, 26, 36, 45, 47, 51, Prayer for Relief ¶ E. This demand seeks to impose a "requirement" for food labeling "not identical" to the federal labeling requirements for Cheerios. *See* 21 U.S.C. § 343-1(a)(2). Accordingly, Plaintiff's claims are expressly preempted. *Id.*

Congress passed NLEA in 1990 to "create uniform national standards regarding the labeling of food." *Savalli v. Gerber Prods. Co.*, 2016 WL 5390223, at *3 (S.D. Fla. Sept. 20, 2016) (citation omitted). To accomplish Congress' goal of national uniformity, the NLEA contains an express preemption provision, explicitly preempting any state labeling requirements "not identical" to federal labeling requirements. *See* 21 U.S.C. § 341-1(a)(2). NLEA preemption bars any non-identical labeling requirement, whether imposed via state statute or through litigation-based labeling efforts like the Complaint here. *Bell v. Campbell Soup Co.*, 65 F. Supp. 3d 1328, 1332 (N.D. Fla. 2014) ("When Congress chose to set matters of this kind off limits to states [via NLEA], it foreclosed not only state regulation but also damages claims based on state law."); *Savalli*, 2016 WL 5390223 at *3 (state regulation and litigation-based claims barred by NLEA).

The term "not identical" in NLEA is defined broadly to mean any requirement "concerning the…labeling of food…(i) [] not imposed by or contained in the applicable provision; or (ii) [that] differ from those specifically imposed by or contained in the applicable provision." 21 C.F.R.

§ 100.1(c)(4); *see also Stansfield v. Minute Maid Co.*, 124 F. Supp. 3d 1226, 1232 (N.D. Fla. 2015) (adopting definition set forth in § 100.1(c)(4)). Accordingly, courts in Florida and elsewhere regularly dismiss complaints where the plaintiff's claims demand labeling requirements "not identical" to those imposed by federal law. *Stansfield*, 124 F. Supp. 3d at 1232 (dismissing complaint based on NLEA preemption); *Savalli*, 2016 WL 5390223 at *4 (same); *Birmingham v. Walgreen*, 2014 WL 12479929, at *5 (S.D. Fla. Jan. 7, 2014) (same); *Bell*, 65 F. Supp. 3d at 1332-33 (same); *see also Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the [FDCA], consistency is not the test; identity is."). Here, the FDCA's labeling provisions and related guidance confirm that Plaintiff's demand that Cheerios' labels identify the alleged trace presence of glyphosate is expressly preempted.

First, a plain reading of the statute reveals the FDCA imposes no labeling requirement whatsoever to disclose the presence of trace pesticides on multi-ingredient foods like Cheerios. Rather, the relevant statutory provision requires only that the label state the "common or usual name of each [] ingredient" in the food. *See* 21 U.S.C. § 343(i)(2). Cheerios' labels do so. Compl. ¶ 19; RJN Ex. A. And section 343(i)(2) falls within the NLEA's express preemption provision. *See* 21 U.S.C. 343-1(a)(2). Accordingly, Plaintiff's insistence that General Mills must disclose glyphosate's presence in Cheerios is preempted. *See Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624 (4th Cir. 2015) (NLEA preemption dismissal; complaint demanding disclosure of the presence of fluoride in bottled water "not identical" to federal requirement); *Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 106-08 (D.D.C. 2006) (NLEA preemption dismissal; complaint demanding disclosure of risk of lactose in milk); *Turek*, 662 F.3d at 426-27 (NLEA preemption dismissal; complaint demanding disclosure of inulin as source of fiber).

Second, Congress' decision not to require disclosure of trace pesticides in foods like Cheerios was not inadvertent. Section 343(l) of the FDCA *does* require the disclosure of the presence of pesticides, but only for "raw agricultural commodities," and then only under limited specified conditions. *See* 21 U.S.C. § 343(l). So, the FDCA plainly reflects Congress' choice to require labeling of pesticides for some foods in some circumstances, and to not require it in others. This deliberate distinction in the statute further confirms that preemption applies to Plaintiff's claims. *See In re: PepsiCo Inc., Bottled Water Mktg. & Sales Pracs Litig.*, 588 F. Supp. 2d 527, 537 (S.D.N.Y. 2008) (dismissing complaint on NLEA preemption grounds for challenge to

labeling of "purified" water, where FDA regulations drew distinction between requirements for "spring" versus "purified" water).

Third, the FDA's own interpretation of the FDCA reflects that there is no labeling requirement to disclose trace pesticides in foods like Cheerios. The FDA's CPG confirms that: "*Pesticide residues resulting from preharvest application* to raw agricultural commodities *have never been considered ingredients subject to the label declaration required by [§ 343(i)(2)] of the FDCA.*" *See* FDA CPG. ("Policy: Residues of pesticide chemicals that are applied either pre-harvest or post-harvest to raw agricultural commodities which are the 'produce of the soil' *are exempt from the labeling requirements of sections [343(i)2] ….* of the Act.") (emphases added).

When a federal agency like the FDA interprets a statute it is empowered to administer, that interpretation is afforded deference. *See In re Establishment Inspection of Wedgewood Vill. Pharm., Inc.*, 270 F. Supp. 2d 525, 549 (D.N.J. 2003) ("Under *Chevron*, this court finds that the [FDA Compliance Policy Guide] is a reasonable interpretation of the statutory scheme established by the FDCA."). FDA Compliance Policy Guides, in particular, are often afforded deference where, as here, they reflect a reasonable interpretation of the statute at issue. *Id.*; *see also Forcellati v. Hyland's, Inc.*, 2015 WL 9685557, at *3 (C.D. Cal. Jan. 12, 2015) (deferring to FDA Compliance Policy Guide to determine requirements for testing of homeopathic drugs); *Herazo v. Whole Foods Mkt., Inc.*, 2015 WL 4514510, at *4 (S.D. Fla. Jul. 24, 2015) (deferring to FDA Compliance Policy Guide for marketing of homeopathic drugs). The Complaint and sources it relies on confirm that glyphosate is a pesticide applied to "oats just before they are harvested." *See* Compl. ¶ 9; *see also* RJN Ex. C. So, the alleged trace glyphosate in Cheerios is exactly the kind of "pesticide residue resulting from preharvest application," that the FDA has interpreted the FDCA to exempt from any labeling requirement in multi-ingredient foods like Cheerios. *See* FDA CPG.

Finally, NLEA preemption applies here to the Complaint in its entirety—including both the demand for affirmative labeling to disclose the presence of glyphosate, and to the Complaint's allegations that certain General Mills' website statements are misleading. *See* Compl. ¶¶ 2, 18. In cases where: (1) the complaint alleges that a product label omits some information that the FDCA does not actually require, and (2) the complaint also challenges associated marketing for the product as misleading *because* of that omission, NLEA preemption extends to both aspects of the complaint. *See Nemphos*, 775 F.3d at 625-26 ("[Plaintiff asserts that [Defendants] misleadingly marketed and advertised their fluoridated bottled water products as especially beneficial to

children. But this misleading marketing claim is essentially the same as [Plaintiff's] failure-to-warn claim—albeit dressed in different clothing…. [NLEA preemption] makes no exception for marketing or advertising in areas regulated by the FDA. The misleading-marketing claim thus fails for the same reason as the failure-to-warn claim. It would impose a requirement under state law that diverges from the federal standard."); *cf. Gibson v. Quaker Oats Co.*, 2017 WL 3508724, at *4 (N.D. Ill. Aug. 14, 2017) (dismissing complaint challenging certain marketing claims on preemption grounds given FDA and EPA's extensive oversight for regulation of glyphosate).

The same thing is true here. The premise of the alleged falsity of the website statements Plaintiff challenges is that these statements mislead consumers *because* of General Mills' alleged failure to disclose glyphosate's presence. Compl. ¶ 37 (characterizing challenged statements as relating to the alleged "safety" of Cheerios given glyphosate's presence). So, claims premised on these statements also necessarily fail given that Plaintiff's underlying demand that glyphosate must be disclosed is expressly preempted. *Nemphos*, 775 F.3d at 625-26.

For all these reasons, the Complaint should be dismissed in full as preempted.

## II.    The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction.

The Complaint also suffers from two jurisdictional defects that require dismissal under Rule 12(b)(1). First, the Complaint does not allege any injury to Plaintiff sufficient to confer Article III standing. Second, the Complaint is barred by 21 U.S.C. § 346a(h). This statute vests exclusive jurisdiction in the EPA and the Circuit Courts for cases, like this one, that challenge the effect of the EPA's established thresholds for permitted residual levels of glyphosate in foods.

### A.    The Complaint fails to allege sufficient facts for Article III standing.

Article III standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Id.* And when a complaint is challenged for a failure to allege facts sufficient to support standing, the court need not presume the truth of the plaintiff's allegations, and may look beyond the pleadings to determine whether subject matter jurisdiction exists. *Hoban*, 204 F. Supp. 3d at 1370.

Plaintiff lacks standing because she has not alleged injury-in-fact arising from the alleged presence of glyphosate in Cheerios. "To establish injury in fact, a plaintiff must show that he or

she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548. Here, Plaintiff's subjective belief that trace amounts of glyphosate in Cheerios are dangerous—ignoring the EPA findings to the contrary—are conjectural and insufficient to plead a "concrete" injury-in-fact. *Id.*; *see* RJN Exs. B-C (EPA finding that glyphosate "not likely to be carcinogenic" and poses "no other meaningful risks to human health").

The allegations of harm are especially speculative in this case, as they have been undermined by the principal third-party source the Complaint relies on. Plaintiff largely bases her injury on testing of Cheerios performed by the third-party EWG; her hastily-drafted Complaint was filed within twenty-four hours of publication of the EWG's "study." *Compare* Compl. ¶¶ 1, 16 (allegations tied to EWG tests) *with* RJN Ex. D (EWG "testing" published on August 15, 2018). Yet, less than two weeks after the publication of its initial study, the EWG—correctly—walked back any notion that eating Cheerios is harmful. *See* RJN Ex. E at 3 ("Q: Should I throw out my Cheerios? A: In a word: No."); *id.* ("Oat-based foods [like Cheerios] remain a healthy source of fiber and nutrients for children and adults and can help to keep the heart and cardiovascular system healthy."). And, of course, the billionths of glyphosate the Complaint alleges might be present in Cheerios, Compl. ¶¶ 14-16, are only a fraction of the 30-parts per *million* level that the agency has deemed "safe" for food (including organic food).

A consistent line of authority holds that there is no Article III standing in these circumstances—where the plaintiff alleges some consumer good has trace amounts of a substance she objects to, but at levels federal authorities have determined pose no health risk. *See Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) ("[Plaintiff] therefore has asserted only a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her, not an injury-in-fact sufficient to confer Article III standing.") (affirming Article III dismissal where plaintiff alleged lead present in lipstick at levels that the FDA had determined were "not dangerous"); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *6-7 (N.D. Cal. July 19, 2012) (dismissing California consumer fraud and unjust enrichment claims involving trace amounts of arsenic and lead in fruit juices for lack of standing where the FDA had determined that the levels alleged were safe); *In re Fruit Juice Prods. Mktg. and Sales Pracs. Litig.*, 831 F. Supp. 507, 510-11 (D. Mass. 2011) (same, finding that plaintiffs had not established injury-in-fact and therefore lacked standing); *Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531,

at *3 (N.D. Cal. Sept. 1, 2010) (dismissal for lack of standing where claims involved trace amounts of formaldehyde and dioxane in children's bath products). The Article III standing defects are even greater in this case because here *both* the governing federal authority *and* the third-party the Complaint relies on each confirm that eating Cheerios is neither unsafe nor dangerous.

Nor is the Plaintiff's bare allegation that "she would not have purchased Cheerios" had she known about the alleged presence of trace glyphosate sufficient to confer standing. Compl. ¶ 2. That argument has been considered and rejected. *See In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d at 512 ("Because Plaintiffs are unable to show that any actual harm resulted from consumption of the fruit juice products, their allegation of 'economic' injury lacks substance."); *Boysen*, 2012 WL 2953069, at *7 ("[P]laintiff only alleges that he purchased and consumed the fruit juices, but that the levels of lead and arsenic in defendant's product were unsatisfactory to him…this is not sufficient to establish Article III injury in fact."); *Estrada v. Johnson & Johnson*, 2017 WL 2999026, at *6 (D.N.J. Jul. 14, 2017) ("Plaintiff has not alleged that Defendants were under any legal obligation to disclose the [alleged] risks associated with [their products]…Plaintiff cannot assert a benefit-of-the bargain theory of economic harm based on an omission, where Plaintiff has failed to allege that Defendants are under a legal duty to disclose the omitted fact."). Accordingly, Plaintiff lacks Article III standing.

### B. The Complaint pertains to matters committed exclusively by Congress to the jurisdiction of the EPA and the Circuit Courts.

Despite framing her claims as a challenge to the labeling and marketing of Cheerios, in reality Plaintiff's Complaint is a thinly-veiled attack on the EPA's established tolerances for glyphosate residue. This issue, however, is committed by statute to the EPA's determination in the first instance, followed by exclusive jurisdiction for any judicial challenge in the federal Courts of Appeal. 21 U.S.C. § 346a(h)(1), (5).  In light of this statutory review scheme, this Court lacks subject-matter jurisdiction over the Complaint.

The safety assessments of pesticides and accompanying decisions on appropriate residual tolerances are committed to the EPA. *See* 7 U.S.C. § 136(bb); 21 U.S.C. § 346a(b). This process requires the EPA to consider and balance a host of factors, including "completeness, and reliability of the available data," "available information concerning the dietary consumption patterns of consumers," and the "nature of any toxic effect shown to be caused by the pesticide chemical or pesticide chemical residue." *See* 21 U.S.C. § 346a(b)(2)(D). In short, the EPA's establishment of a pesticide residue tolerance is informed by the best science and data available.

-13-

The resulting residual levels are *exclusively* challengeable through a two-step process requiring: (1) the filing of a petition with the EPA requiring administrative exhaustion, and then, (2) limited judicial review at the federal appellate, *not* district court, level. *See* 21 U.S.C. §§ 346a(d)(1), 346a(g)(2)(A), (B), 346a(h)(1), (5); 40 C.F.R. § 180.30(b). Federal courts have repeatedly enforced this jurisdictional bar in cases challenging EPA tolerance levels. *See, e.g., Geertson Farms, Inc. v. Johanns*, 439 F. Supp. 2d 1012, 1021 (N.D. Cal. 2006) (granting motion to dismiss where claim relating to tolerance glyphosate fell "squarely within section 346a(h)'s exclusive review provision"); *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 169, 176 (affirming dismissal for lack of subject-matter jurisdiction, in light of the "sweeping language" of § 346a(h)(5)).

Here, the Complaint is an improper end-run around the narrow channel of review established by Congress. The Complaint alleges that "ultra-low levels" of glyphosate "may be harmful to human health." Compl. ¶ 10. It goes on to cite third-party "studies" purporting to establish "at what levels" glyphosate can be considered safe in foods, *id.* ¶ 13, and complains that this residual glyphosate in Cheerios is above the "health benchmark" these third parties purport to set. *Id.* ¶ 16. In doing so, the Complaint contends, General Mills deceived consumers about whether Cheerios are "safe." *Id.* ¶ 35. And in each instance where the Complaint cites "testing" of Cheerios for support, the residual levels of glyphosate cited is a fraction of the 30-ppm level the EPA has determined is "safe." *See* Compl. ¶¶ 14-16; 40 C.F.R. § 180.364. These challenges fall squarely within the purview of the EPA's statutorily-mandated review. *See* 21 U.S.C. § 346a(b)(2)(D).

Subsequent events further confirm that Section 346a(h)'s jurisdictional bar applies here. On September 27, 2018, the EWG—which again is the third-party on whose testing the Complaint principally rests—formally petitioned the EPA pursuant to § 346a(d) to modify the residual tolerance levels of glyphosate for oats specifically. *See* RJN Ex. F. That petition cites as supporting evidence the very same testing of Cheerios that the Plaintiff places at issue here. *Compare* Compl. ¶ 15-16 *with* RJN Ex. F, page 6 (EWG petition describing its Cheerios testing, along with that of Food Democracy Now, as "notable"). Indeed, the Complaint's allegations of alleged usage and harm of glyphosate are mirrored throughout the EWG petition. *Compare* Compl. ¶¶ 7-12 (allegations of glyphosate usage on oats and allegations of harm) *with* RJN Ex. F at 3-18 (substantively identical assertions in EWG petition). Beyond resort to the same body of proof,

-14-

there is also material overlap between the EWG petition's demand for changes to the EPA's residual tolerance levels as not "safe," and the Complaint's assertion that levels below those the EPA permits "may be harmful to humans." *Compare* Compl. ¶¶ 10, 35, 37 *with* RJN Ex. F at 8-18.

In sum, the Complaint is substantively redundant of the EWG petition. So, allowing this case to proceed would improperly circumvent the statutorily mandated review process, in defiance of the clearly discernible intention of Congress to preclude district court review. Federal courts do not permit jurisdictional limits to be so easily avoided: Plaintiffs' Complaint should be dismissed. *See Johnson*, 461 F.3d at 174 (affirming dismissal of claims challenging EPA tolerances).

**III.  Each of the Complaint's Causes of Action Fail to State a Claim.**

NLEA express preemption, failure to satisfy standing, and Congress' withdrawal of jurisdiction under § 346a(h) each provide sufficient grounds to dismiss the Complaint. Independent of these flaws, all four causes of action in the Complaint also fail individually.

**A.  The FDUTPA claim should be dismissed because it does not satisfy either the "reasonable consumer" or "causation" elements.**

Plaintiff's FDUTPA claim is premised on an assertion that General Mills made "material statements about the safety of Cheerios that were wither [sic] false or misleading." Compl. ¶ 36. But the Complaint fails to plausibly allege: (1) that these "statements" would lead a "reasonable consumer" to conclude that Cheerios are free of glyphosate down to molecular levels of purity, or (2) that these "statements," which are drawn from various General Mills' websites, caused Plaintiff's purchase.[3]

First, the FDUTPA claim fails to meet the "reasonable consumer" standard. Under FDUTPA, "[d]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). "This standard requires a showing of probable, not

---

[3] To the extent the FDUTPA claim is also premised on the alleged "omission" of glyphosate's presence, it likewise fails to satisfy the "reasonable consumer" standard. *See Hermosilla v. Coca-Cola Co.*, 2010 WL 11553428, at *3 (S.D. Fla. Aug. 17, 2010) (dismissing FDUTPA omission claim where "any consumer who relied on the omission in drawing false conclusions would be acting unreasonably"). No reasonable consumer would expect that, listed among a food's ingredients, there should be separate disclosures reporting in billionths the possibility of trace pesticides used during the agricultural process. *Id.* Regardless, the demand for the "omitted" labeling is expressly preempted. *See infra* Argument, Part I.

possible, deception that is 'likely to cause injury to a reasonable relying consumer.'" *Id.* (citations omitted). The question of whether a marketing claim is deceptive under this standard may be decided as a matter of law on a motion to dismiss. *Zlotnick*, 480 F.3d at 1284.

It is implausible that any *reasonable* consumer would interpret statements like "wholesome goodness for toddlers and adults," Compl. ¶ 18, to mean that Cheerios must be free of trace pesticides down to the molecular level. The levels of glyphosate Plaintiff alleges are present in Cheerios are a fraction of the EPA's 30 ppm threshold. *See* Factual Background, Part I, A *supra*. Indeed, the levels allegedly present are so slight, they are below the more restrictive standard for organic foods—even though it is undisputed that Cheerios are not subject to rules for organic foods. *See id.* It thus is not plausible to believe that even though Cheerios meets these exacting standards, a reasonable consumer would nonetheless read a statement like "perfect, crunchy snack anytime" and conclude that Cheerios must have an even higher degree of purity. *See, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013) ( "it is implausible that a reasonable consumer would believe ingredients allowed in a product labeled 'organic'. . . would not be allowed in a product labeled 'all natural'").

A federal court recently addressed this issue and concluded the "reasonable consumer" standard was not met. In *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877 (D. Minn. July 12, 2017), the plaintiff alleged that because of the trace presence of glyphosate in General Mills' Nature Valley granola bars, it was misleading to label those products "natural." *Id.* at *1. On General Mills' motion to dismiss, the court held that "Plaintiffs . . . failed to plausibly allege that the statement 'Made with 100% Natural Whole Grain Oats' means, or could be interpreted by a reasonable consumer to mean, that there is no trace glyphosate in Nature Valley Products." *Id.* at *5. The court further reasoned that "[i]t is implausible that a reasonable consumer would believe that a product labelled as having one ingredient—oats—that is '100% Natural' could not contain a trace amount of glyphosate that is far below the amount permitted for organic products." *Id.*

*In re General Mills Glyphosate Litigation* is on point. There, as here, "it is not plausible to allege [here] that the [statements challenged in the Complaint] means[] that there is no trace glyphosate in [Cheerios] or that a reasonable consumer would so interpret the label." *Id.* "It would be nearly impossible to produce a processed food with no trace of any synthetic molecule." *Id.* Plaintiff's FDUTPA allegations are, if anything, even more implausible than the claims dismissed in *General Mills Glyphosate*. The statement that "Cheerios is a perfect, crunchy anytime snack"

certainly cannot be *reasonably* interpreted to mean that Cheerios has the kind of absolute hermetic purity the Plaintiff demands—which, in addition to its implausibility, is a level of purity entirely untethered from the relevant legal standards the FDA and EPA impose. *General Mills Glyphosate*, 2017 WL 2983877 at *6; *Panitch v. Quaker Oats Co.*, 2017 WL 3922149, at *3 (N.D. Ill. Sept. 6, 2017) ("Plaintiffs have [not] plausibly alleged that reasonable consumers share their interpretation of 'natural' as indicating a product is free of trace amounts of any pesticide down to the molecular level."); *Kinn v. Quaker Oats Co.*, 2017 WL 3922068 at *3 (N.D. Ill. Sept. 6, 2017) (same).

The same is true as to the other website statements challenged, such as "Wholesome Little O's." *See* Complaint ¶ 18. The Complaint is devoid of allegations as to why a reasonable consumer would interpret such statements to imply anything about the presence of trace pesticides in the product, let alone that the products have pesticide levels far below those permitted for "organic" foods. *See General Mills Glyphosate*, 2017 WL 2983877 at *6; *Panitch*, 2017 WL 3922149, at *3; *Kinn*, 2017 WL 3922068 at *3; *Pelayo*, 989 F. Supp. 2d at 979. The FDUTPA claim thus fails to satisfy the "reasonable consumer" standard.

Second, the Complaint fails to plead causation sufficient to state a FDUTPA claim. "[A] claim pursuant to the FDUTPA [must allege]: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073 (Fla.Dist.Ct.App.2008). Although Florida courts have held that a specific allegation of reliance is not required, it remains true that "causation is a necessary element of the FDUTPA claim, and causation must be direct, rather than remote or speculative." *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (internal citation and quotation omitted). Without an adequate connection pled between the defendant's alleged conduct and the plaintiff's damages, causation is not met. *Kais v. Mansiana Ocean Residences, LLC*, 2009 WL 825763, at *2 (S.D. Fla. Mar. 26, 2009) ("As to the second element of a FDUTPA claim, causation, . . .Plaintiff has failed to state how any of the alleged deceptive or unfair practices caused damage to Plaintiff.").

There is no nexus here between the challenged website statements and Plaintiff's claimed damage (i.e., her Cheerios purchases). The supposed "misleading" statements are not on Cheerios' labels. *See* RJN Ex. A. Instead, Plaintiff draws these statements from various General Mills websites. *See*, e.g., Complaint ¶¶ 1, 17; RJN Ex. I. Yet, there are no allegations to suggest that these statements caused Plaintiff's purchase in any manner. Plaintiff has therefore not alleged "direct" causation, as her FDUTPA claim requires. *Lombardo*, 124 F. Supp. 3d at 1290. While

Plaintiff need not allege that she relied on General Mills' representations, the FDUTPA does require that Plaintiff at least allege exposure to the representations such that reasonable buyers may have been deceived. *See*, *e.g.*, *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 692 (S.D. Fla. 2014) (". . . the inquiry focuses on whether a reasonable consumer, *exposed to the misrepresentation*, would likely have been deceived.") (emphasis added). She does not, and her FDUTPA claim accordingly fails. *See*, *e.g.*, *Lombardo*, 124 F. Supp. 3d at 1290 (holding that Defendants' allegedly deceptive pricing practices were too remote and speculative to satisfy the FDUTPA's causation element); *Perisic v. Ashley Furniture Indus., Inc.*, 2018 WL 3391359, at *6 (M.D. Fla. June 27, 2018) (holding that plaintiff was unable to establish causation where each class member had a unique sales experience and exposure to varying marketing claims).

**B.      The warranty claims should be dismissed because Plaintiff does not identify any actionable contract, there is no privity, and Cheerios are "merchantable."**

Next, the Complaint asserts claims for breach of express warranty and the implied warranty of merchantability, pointing in particular to the website statement that Cheerios are "wholesome goodness for toddlers and adults" as giving rise to such warranties. *See* Compl. ¶¶ 43, 48. These warranty claims fail for multiple reasons.

First, the Complaint fails to allege the presence of any actionable contract to which the supposed warranty attached, as Plaintiff's express and implied warranty claims require. Warranty claims, whether express or implied, sound in contract. *T.W.M. v. Am. Med. Sys., Inc.* 886 F. Supp. 842, 844 (N.D. Fla. 1995) ("[a] warranty, whether express or implied, is fundamentally a contract"); Fla. Stat. § 672.314 (implied warranty attaches to a "contract for sale"); *Garcia v. Clarins USA, Inc.*, 2014 WL 11997812 *6 (S.D. Fla. Sept. 5, 2014) ("[A]n express warranty is generally considered to arise only where the seller asserts a fact . . . on which the buyer justifiably relies as part of the 'basis of the bargain'"). Here, the only alleged sale to which any contractual right could attach is the Plaintiff's alleged Cheerios' purchase. *See* Compl. ¶ 2. But the statement "wholesome goodness for toddlers and adults" appears on a General Mills website, not on the label that accompanied the sale, and the Complaint does not allege that Plaintiff saw or considered this statement. *See* RJN Ex. I. It therefore could not have formed any part of the "basis of the bargain" tied to the actual sale of Cheerios sufficient to give rise to any warranty claim.

Second, Plaintiff's warranty claims fail for lack of privity. To plead privity, a plaintiff must allege there was a sale from manufacturer to plaintiff, a contract between them, or a warranty

communicated from the manufacturer to plaintiff. *MacMorris v. Wyeth, Inc.*, 2005 WL 1528626, at *3 (M.D. Fla. June 27, 2005). Where an individual has purchased a product but has not done so directly from the manufacturer, the parties are not in privity with one another. *Cruz v. Mylan, Inc.*, 2010 WL 598688, at *2 (M.D. Fla. Feb. 17, 2010). The privity requirement extends to implied warranties as well. *Speier-Roache v. Volkswagen Grp. of Am., Inc.*, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) ("a contract action for breach of implied warranty does not lie where there is no privity of contract" between a plaintiff and defendant"). Here, the Complaint is devoid of any allegation of privity between Plaintiff and General Mills. Plaintiff does not allege that there was a direct sale, contract, or any contact at all between the parties.

Third, as to the implied warranty of merchantability claim, this claim also fails because Plaintiff does not and cannot allege that Cheerios are not "merchantable." Under Florida law, a product is "merchantable" if the product is acceptable in the trade, of fair average quality, and fit for the ordinary purpose for which such goods are used. *See* Fla. Stat. Ann. § 672.314; *see also Crawford v. Gold Kist, Inc*. 614 F. Supp. 682, 688 (M.D. Fla. 1985). "The tests of merchantability are standards of minimal quality measured in accordance with the standards of the trade." *See Royal Typewriter Co. v. Xerographic Supplies Corp*., 719 F.2d 1092, 1099 (11th Cir. 1983). A food product is fit for "ordinary use," and thus "merchantable," if it is edible and not contaminated. *See, e.g*., *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (dismissing implied warranty claim where plaintiff did not allege "that the beverage was not drinkable, that it was contaminated or contained foreign objects, etc."). Plaintiff does not, and cannot, allege that the Cheerios she purchased were unfit for consumption.

### C.    The unjust enrichment claim should be dismissed because Plaintiff has adequate remedies at law.

Unjust enrichment claims fail where they are duplicative of other causes of action. *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *8 (S.D. Fla. Dec. 5, 2013). Although a plaintiff may plead unjust enrichment as an alternative theory, if the "claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Id.* at *7. An unjust enrichment claim is available only where there is no adequate remedy at law. *Matthews v. Am. Honda Motor Co., Inc.*, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012).

Here, Plaintiff's unjust enrichment claim is based on the same predicate allegations in her other causes of action and seeks the same relief.  In fact, Plaintiff expressly incorporates the

allegations contained in her legal causes of action as the basis for her unjust enrichment claims. Compl. ¶ 54. The claim fails. *See Nichols v. Wm. Wrigley Jr. Co.*, 2011 WL 181458, at *1 (S.D. Fla. Jan. 19, 2011).

**CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Dated: October 12, 2018                      Respectfully submitted,

/s/ *Angela Teresa Puentes*
ANGELA TERESA PUENTES (FBN 0524621)
apuentes-leon@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
Miami Tower – 100 SE Second St.
Suite 4200
Miami, Florida  33131
Tel:     305.530.0050
Fax:    305.530.0055

/s/ *Chris S. Coutroulis*
CHRIS S. COUTROULIS (FNB 300705)
ccoutroulis@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
Corporate Center Three at Int'l Plaza
4221 West Boy Scout Blvd., Suite 1000
Tampa, Florida 33607-5780
Telephone:    (813) 223-7000
Facsimile:      (813) 229-4133

/s/ *Charles C. Sipos*
Charles C. Sipos
CSipos@perkinscoie.com
*Appearing Pro Hac Vice*
David T. Biderman
DBiderman@ perkinscoie.com
*Appearing Pro Hac Vice*
Mica D. Klein
MKlein@ perkinscoie.com
*Appearing Pro Hac Vice*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington  98101-3099
Telephone:  (206) 359-3983
Facsimile:  (206) 359-4983

***Counsel for Defendant General Mills, Inc.***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of October, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

_/s/Angela Teresa Puentes_
ANGELA TERESA PUENTES

## SERVICE LIST

SCOTT P. SCHLESINGER
Email: scott@schlesingerlaw.com
JONATHAN R. GDANSKI
Email: jgdanski@schlesingerlaw.com
JEFFREY L. HABERMAN
Email: jhaberman@schlesingerlaw.com
SCHLESINGER LAW OFFICES, P.A.
1212 SW Third Avenue
Ft. Lauderdale, FL 33316
Telephone:  (954) 467-8800
*Attorneys for Plaintiff*